FeeemaN, J.,
delivered the opinion of the court.
This was an action upon an insurance policy against loss by fire, upon the “stock of family groceries contained in the two story frame building occupied below by the assured as a meat and family grocery store.”
The plaintiff having recovered, the company has appealed in error.
This policy contains a large number of conditions and restrictions. As usual, these are set forth in a printed form, of great length.
As frequently remarked by the courts, these printed conditions are apt to escape the notice of the assured, and they sometimes “define away” all, or nearly all, of the substantial part of the contract; and, for this reason, in cases where there appears to be a conflict between the printed form and the written portions of the policy, the latter have been held to be a waiver of the former.
But certainly the parties may make their own contracts, and by the stipulations of these, according to their fair and reasonable meaning, they will be bound.
One of the conditions of this policy, being a part of the printed form, is as follows;
“If during this insurance, the above mentioned premises (the premises containing the stock of groceries) shall be used for any trade, business, or vocation, or for storing, using, or vending, therein, any of the articles, goods, or merchandise, denominated hazardous, or extra hazardous, or specially hazardous, *517 in the second class of hazards on the back of this policy, . . . except as herein specially agreed to in •writing, upon this policy, then, and from thence forth, so long as the same shall be .so appropriated, applied, or used, this policy shall cease, and be of no effect.”
Among the things so classed on the back of the policy, are petroleum, liquors, matches, etc., and the business of retailing liquors.
The foregoing articles were kept by the . plaintiff, as the proof shows, and it also shows that he retailed liquors without a license.
By the express provisions of the policy, above quoted, to keep these articles avoided the policy, unless it contained a special agreement, in writing, that they might be kept.
The question is, does the policy contain such an agreement in writing ?
The Circuit Judge held, in substance, that the following words of the' policy, to-wit: — “on his stock of family groceries contained in the two story frame building occupied below by the assured as a meat and family grocery store,” — being in writing, amounted to an express consent that these articles might be kept, provided they were usually kept in a family grocery store: — that the use of these general words, “meat and family grocery store,” would be an express consent that the assured might keep all articles usually kept in such a store.
Upon this question there is conflict in the authorities.
The Massachusetts cases are, by the counsel, admitted to be against this proposition.
*518 Flanders, in his work on Fire Insurance, cites numerous cases sustaining the ruling of Circuit Judge. See p. 309.
The question of doubt is, whether the general terms; used, “meat and family grocery store,” shall be held to amount to the express written consent required
The policy contains a provision evidently intended to meet this exigency, — one that does not seem to have been contained in the cases upon which the text in Flanders is founded. It is as follows:—
“The use of general terms, or anything less than a distinct, specific agreement, clearly expressed, and-endorsed on the policy, shall not be construed as a-waiver of any printed or written condition or restriction therein.”
This, we think, leaves but little room for argument.
We are constrained to hold, under this provision, that the general terms in the beginning of the policy “family groceries,” or “meat and family grocery store,” are not a waiver of the restriction against keeping-petroleum, liquors, etc., marked extra hazardous.
The cases referred in 22 N. Y., 441; 17 N. Y.,. 194; and 6 Wend., 623, have been examined; but they do not meet this objection.
The cases where the written portions of the contract have been held to overrule the printed portions, are only where they are in conflict, and cannot be reconciled. Flanders on Insurance, 72, 212, 216.
The Circuit Judge held that the company should have known what is usually kept in a family grocery store, and that if it was not intended that the gen *519 eral terms above quoted should be a permission to keep all such articles, it should have been so stated in unmistakable terms, and that this had not been done.
As we have said, we think this an erroneous construction of the contract.
The charge also uses language which was calculated to mislead the jury, by assuming that the prohibited articles mentioned were such as were usually kept in a family grocery store. This, in any event, was a question of fact for the jury.
But again, as before stated, the policy contained a. restriction against the building’s being used as a retail liquor store. As to this, the Judge instructed the jury that if the insured converted his store into a tippling shop as his principal business, this would avoid the' policy; but that if he occupied the house as a meat and grocery store as his principal business, and, as only incidental to this, he, occasionally or frequently, sold whisky, by the glass or otherwise, this would not avoid the policy.
We think this rather a latitudinarian construction of the contract.
We would not, indeed, avoid the policy for an immaterial or accidental violation of this restriction. The law has regard for a substantial compliance with contracts. But, as we construe this contract, it contains a prohibition against the use of the building as a retail liquor store. But according to the construction given, the house might have been used for retailing liquor, as the proof indicates that it was, provided that the as *520 sured made his other business, in the meat aud family-grocery line, so far exceed amount of the retail liquor business as to make the latter his principal business.
We think this language too strong, and that it was erroneous.
The charge should have been, that the house could not be used for the business of retailing liquors.
We suppose that insurance companies are compelled, in order to guard against frauds, to resort to these carefully prepared conditions and restrictions. At any rate, they are entitled to stand upon their contracts, according to fair a and just interpretation of these.
For the errors indicated, the judgment is reversed, and a new trial awarded.